1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| HERTIS JACKSON, an individual; JOHN T. BORENIN, an individual; KASSEM DICKENS, an individual; DIANE DIEMER, an individual; DEBORAH KAMBICH, an individual; EDWARD MARTINEZ, an individual; RAY MENDOZA, an individual; LINDA PRICE, an individual; IAN SIMANGO, an individual; ANDREA SOMERVILLE, an individual; ESEQUIEL VENEGAS, an individual; and BRIAN WOODS, an individual,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>SPECIALIZED LOAN SERVICING, LLC, a Colorado Limited Liability Company; and DOES 1 through 25, inclusive,<br><br>                    Defendant. | CASE NO. CV 14-05981 MMM (PLAx)<br><br><br>ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND DENYING DEFENDANT'S MOTION TO DISMISS AS MOOT |

On April 2, 2014, Hertis Jackson, John T. Borenin, Kassem Dickens, Diane Diemer, Deborah Kambich, Edward Martinez, Ray Mendoza, Linda Price, Ian Simango, Andrea Somerville, Esequiel Venegas, and Brian Woods (collectively "plaintiffs") filed this action in Los

Angeles Superior Court against Specialized Loan Servicing, LLC ("SLS") and various fictitious defendants.[1]  After being served on July 1, 2014,[2] SLS timely removed the action to this court on July 30, 2014, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332(a).  On August 5, 2014, SLS filed a motion to dismiss the complaint,[3] which plaintiffs oppose.[4]  Plaintiffs filed a motion to remand on August 12, 2014,[5] which SLS opposes.[6]

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds this matter appropriate for decision without oral argument.  The hearing calendared for November 3, 2014 is therefore vacated, and the motions are taken off calendar.

# I.  FACTUAL BACKGROUND

### A.      Facts Alleged in the Complaint

#### 1.        Background Regarding Securitization of Home Loans[7]

Lenders purportedly securitize home loans because they desire to convert non-liquid thirty-year mortgage loans into relatively safe, liquid securities that can be bought, sold, and traded on the stock market, e.g., certificates, bonds, and stock.[8]  As part of the securitization process, lenders allegedly originate mortgage loans and pool them so that they can be sold together as residential mortgage-backed securities ("RMBS's"); this purportedly creates a steady flow of

---

[1]Notice of Removal ("Removal"), Docket No. 1 (July 30, 2014), Exh. A ("Complaint").

[2]Removal, ¶ 12.

[3]Motion to Dismiss ("MTD"), Docket No. 8 (Aug. 5, 2014).

[4]Opposition to Motion to Dismiss ("MTD Opp."), Docket No. 17 (Oct. 13, 2014).

[5]Motion to Remand ("MTR"), Docket No. 12 (Aug. 12, 2014).

[6]Opposition to Motion to Remand ("MTR Opp."), Docket No. 15 (Aug. 20, 2014).

[7]The court provides a brief background, based on the facts alleged in plaintiffs' complaint, regarding the securitization of home loans, which is the process at the center of this case.

[8]Complaint, ¶ 4.

revenue for the funding of new mortgage loans.[9]  Lenders who securitize non-liquid mortgages and deeds of trust allegedly enjoy favorable tax benefits under the Real Estate Mortgage Investment Conduit ("REMIC") Act.[10]  Plaintiffs assert that the REMIC Act allows lenders and investment banks to "operate without the hindrance of banking regulations, avoid liability and tax issues," and increase profits by pooling and reselling home loans to investors in Real Estate Investment Trusts ("REIT's").[11]

Plaintiffs contend that the REMIC Act allows RMBS's to achieve "bankruptcy remoteness" if two "true sales" of the loan occur.[12]  To effect a "true sale" under the REMIC Act, a lender purportedly must transfer the physical note and have it endorsed by the assignee.[13]  The lender must also allegedly observe: (1) New York state law; (2) the express terms of the REIT's Pooling and Servicing Agreement ("PSA"); (3) the Mortgage Loan Purchase Agreement ("MLPA"); and (4) the Uniform Commercial Code ("UCC").[14]

Plaintiffs contend that Mortgage Electronic Registration Systems ("MERS") is a shell corporation formed by mortgage lenders to circumvent the REMIC Act's "true sale" requirements and avoid having physically to endorse, assign, transfer, or record the note following securitization of the loan.[15]  They assert that SLS and other lenders have utilized MERS to conceal the identity of the holder in due course ("HIDC") of the note, leaving borrowers with no way to

---

[9]*Id.*

[10]*Id.*, ¶¶ 4-5.

[11]*Id.*

[12]*Id.*, ¶ 5.

[13]*Id.*

[14]*Id.*, ¶ 6.

[15]*Id.*, ¶ 8.

ascertain the note holder.[16]  Because the HIDC is the party that can demand payment of the loan, and the HIDC's identity is concealed, plaintiffs allege that they do not know whether an entity demanding payment is the holder of the note and has the right to demand payment.[17]

### 2.    The Allegedly Fraudulent Securitization of Plaintiffs' Home Loans

The gravamen of plaintiffs' claims is best summarized in paragraph sixteen of the complaint:

> "Plaintiff's simply allege that, as a result of the improper and illegal procedures described elsewhere in this Complaint, and the mass chaos resulting from Plaintiffs' notes and trust deeds having changed hands multiple times since origination, the true owner of each mortgage for each Plaintiff is unclear and very much in dispute. Further, while Defendants may have *attempted* securitization of Plaintiffs' loans at issue, in truth Defendants failed to do so properly and completely under the law, being that they did not follow the requirements of the relevant governing PSA. Defendants further violated New York trust law in attempting but failing to accomplish such securitization of Plaintiffs' mortgages.  As a result, at the very least, Plaintiffs allege, they have been paying to Defendants loan payments for years that Defendants are not legally or contractually entitled or authorized to be demanding or accepting."[18]

Plaintiffs are twelve individuals, each with a home mortgage loan that is being serviced by SLS.[19]  SLS is a loan servicing company that conducts business in all fifty states and holds itself out as "a nationally recognized leader in the residential mortgage servicing business [that]

---

[16]*Id.*, ¶¶ 9-10.

[17]*Id.*, ¶¶ 12-14.

[18]*Id.*, ¶ 16.

[19]*Id.*, ¶¶ 20-31.

4

specializes in the servicing of single-family residential mortgage loans [and] has been in business since 2003."[20]

Plaintiffs assert that the PSAs governing the REITs in which their home loans were pooled required that all endorsements, transfers, and assignments of a note occur prior to the closing of the REIT.[21] Despite this requirement, SLS and certain unnamed predecessors in interest purportedly failed to endorse, transfer, and assign plaintiffs' notes prior to the closing of the relevant REITs.[22] Plaintiffs maintain that the failure to record any assignment of the loans to a REIT was also a violation of state recording statutes.[23] They allege, on information and belief, that SLS and unnamed defendants routinely fail to endorse notes and record assignments until they seek to initiate non-judicial foreclosure proceedings years after the closing of the relevant REITs.[24] They contend that the failure to record assignments of their loans prior to the REITs' closing date precludes subsequent assignees from asserting that they are the HIDC under the note, which in turn prevents them from demanding payment from plaintiffs.[25] Due to SLS's purported failure properly to endorse the notes and record assignments, plaintiffs further allege, on information and belief, that SLS is not an HIDC of the notes.[26]

Plaintiffs contend that, to cure these defects in the chain of title, their loans have been unlawfully moved into and out of REITs in violation of the loans' PSAs and state statutes.[27] They

[20]*Id.*, ¶¶ 17-19.

[21]*Id.*, ¶ 32.

[22]*Id.*

[23]*Id.*, ¶ 33.

[24]*Id.*, ¶ 34.

[25]*Id.*, ¶¶ 37-39.

[26]*Id.*, ¶ 43.

[27]*Id.*, ¶ 48.

assert, on information and belief, that "based upon this common practice in the mortgage industry of losing track of the chains of title for mortgage notes as a result of securitization," SLS no longer owns the notes and deeds of trust related to plaintiffs' loans, and has no servicer rights or authority respecting the loans.[28]  They contend that, despite the fact that SLS "ha[s] no ownership interest in such loans, nor any 'servicer' rights," it has been collecting monthly loan payments from each plaintiff as a purported "servicer" of the loans for years.[29]  Because SLS has in this way fraudulently held itself out as a "servicer" of plaintiffs' mortgage loans, plaintiffs assert they have been "wrongfully dispossessed of thousands of dollars."[30]

Plaintiffs also allege that the purportedly "failed securitization process" has resulted in their notes being "irreparably split from their corresponding trust deeds."[31]  As a result, plaintiffs contend that MERS as principal, and SLS as the servicer, lack any authority to enforce the notes or collect payments thereunder.[32]  They assert there is "a serious question and dispute as to the very ownership and possession of the notes and deeds at issue."[33]

---

[28]*Id.*, ¶ 70.

[29]*Id.*, ¶¶ 50, 64.

[30]*Id.*, ¶ 65.

[31]*Id.*, ¶ 72.

[32]*Id.*, ¶¶ 72-73.

[33]*Id.* at 16, ¶ 27.

### 3. Plaintiffs' Claims

Plaintiffs' complaint alleges claims for fraud;[34] conspiracy to commit fraud;[35] conversion;[36] conspiracy to convert;[37] violation of the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 *et seq.*;[38] violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq.*;[39] and unjust enrichment.[40] They seek general damages, special damages, restitutionary damages, and pre- and post-judgment interest.[41] Each plaintiff expressly disclaims that his or her total damages exceed $75,000. Each also asserts that he or she is not seeking injunctive or declaratory relief.[42]

### B. SLS's Request for Judicial Notice

SLS requests that the court take judicial notice of sixteen documents related to plaintiffs' claims.[43] All of the documents have either been recorded by a government office or are bankruptcy court filings.[44] Plaintiffs do not oppose SLS's request.

---

[34]*Id.* at 16-18, ¶¶ 25-37.

[35]*Id.* at 19-20, ¶¶ 38-43.

[36]*Id.* at 20-22, ¶¶ 44-51.

[37]*Id.* at 22-24, ¶¶ 52-57.

[38]*Id.* at 24-25, ¶¶ 58-66.

[39]*Id.* at 26-27, ¶¶ 67-75.

[40]*Id.* at 27-29, ¶¶ 76-83.

[41]*Id.* at 29.

[42]*Id.* at 18, 20, 22, 23, 25, 27, 28, ¶¶ 37, 43, 51, 57, 66, 75, 83.

[43]Defendant Specialized Loan Servicing, LLC's Request for Judicial Notice ("RJN"), Docket No. 9 (Aug. 5, 2014).

[44]See RJN at 2-5.

A court can consider evidence proffered by the parties in deciding a remand motion, including documents that can be judicially noticed. See, e.g., *Ryti v. State Farm General Ins. Co.*, No. C 12-01709 JW, 2012 WL 2339718, *1 n. 4 (N.D. Cal. May 30, 2012) (granting plaintiffs' request for judicial notice and considering the judicially noticeable documents with their motion to remand); *Vasquez v. Arvato Digital Services, LLC*, No. CV 11-02836 RSWL (AJWx), 2011 WL 2560261, *2 (C.D. Cal. June 27, 2011) (considering judicially noticeable documents in deciding a motion to remand); *Aniel v. TD Serv. Co.*, No. C 10–05323 WHA, 2011 WL 109550, *3 (N.D. Cal. Jan. 13, 2011) (court took judicial notice of court orders and the judgment in a prior case as public records in deciding a motion to remand); *Deutsche Bank Nat. Trust Co. v. Sitanggang*, No. 1:09cv01835 AWI DLB, 2010 WL 144439, * 1 n. 1 (E.D. Cal. Jan. 11, 2010) (taking judicial notice of documents proffered by plaintiff in deciding a motion to remand); *Flower v. Wachovia Mortg. FSB*, No. C 09–343 JF (HRL), 2009 WL 975811, *2–3 (N.D. Cal. Apr. 10, 2009) (in analyzing a motion to remand, court took judicial notice of Office of Thrift Supervision documents regarding the corporate structure of Wells Fargo and Wachovia to determine the citizenship of the defendant corporation).

In deciding a Rule 12(b)(6) motion, however, courts generally look only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Although a court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it "considers evidence outside the pleadings . . . [it] may . . . consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (a court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Branch v. Tunnell* 14 F.3d 449, 453 (9th Cir. 1994) (noting that a court may consider a document whose contents are alleged in a

complaint, so long as no party disputes its authenticity), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Thus, in deciding plaintiffs' motion to remand and SLS's motion to dismiss, the court can consider material that can be judicially noticed under Rule 201 of the Federal Rules of Evidence. FED.R.EVID. 201. Under Rule 201, the court can take judicial notice of "[o]fficial acts of the legislative, executive, and judicial departments of the United States," and "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Courts have held that "[j]udicial notice is appropriate for records and 'reports of administrative bodies.'" *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943, 955 (9th Cir. 2008) (quoting *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1954)).

SLS asks that the court take notice of fifteen recorded documents: (1) a register of deeds from the Geary County, Kansas, Recorder, which reflects that lender American General Finance made a mortgage loan to plaintiff Hertis Jackson that was recorded on March 20, 2001;[45] (2) a deed of trust, Document No. 2006-077002-0, executed by plaintiff John T. Borenin, dated November 13, 2006 and recorded by the Anchorage County, Alaska, Recorder;[46] (3) a deed of trust, Document No. 2006-077003-0, executed by plaintiff John T. Borenin, dated November 13, 2006 and recorded by the Anchorage County, Alaska, Recorder;[47] (4) a deed of trust, Document No. 2005-0429197, executed by plaintiff Kassem Dickens, dated May 24, 2005 and recorded by the Riverside County, California, Recorder;[48] (5) a deed of trust, Document No. 2005-0429198, executed by plaintiff Kassem Dickens, dated May 24, 2005 and recorded by the Riverside County,

---

[45]RJN, Exh. 1.

[46]RJN, Exh. 2.

[47]RJN, Exh. 3.

[48]RJN, Exh. 4.

California, Recorder;[49] (6) a deed of trust, Document No. 2005-0061229-00, executed by plaintiff Diane Diemer, dated December 2, 2005 and recorded by the Yolo County, California, Recorder;[50] (7) a deed of trust, Document No. 2005-0061230-00, executed by plaintiff Diane Diemer, dated December 2, 2005 and recorded by the Yolo County, California, Recorder;[51] (8) a deed of trust executed by plaintiff Deborah Kambich, dated June 13, 2007 and recorded by the San Diego County, California, Recorder;[52] (9) a deed of trust executed by plaintiff Linda Price, dated April 27, 2007 and recorded by the Los Angeles County, California, Recorder;[53] (10) a deed of trust, Document No. 20061228001821220, executed by plaintiff Ian Simango, dated December 26, 2006 and recorded by the Collin County, Texas, Recorder;[54] (11) a deed of trust, Document No. 20061228001821230, executed by plaintiff Ian Simango, dated December 26, 2006 and recorded by the Collin County, Texas, Recorder;[55] (12) a deed of trust, Document No. 2006-0049258, executed by plaintiff Esequiel Venegas, dated September 22, 2006 and recorded by the Shasta County, California, Recorder;[56] (13) a deed of trust, Document No. 2006-0049259, executed by plaintiff Esequiel Venegas, dated September 22, 2006 and recorded by the Shasta County, California, Recorder;[57] (14) a deed of trust, Document No. 1450868, executed by plaintiff Brian Woods, dated September 11, 2006 and recorded by the Santa Fe County, New Mexico,

---

[49]RJN, Exh. 5.

[50]RJN, Exh. 6.

[51]RJN, Exh. 7.

[52]RJN, Exh. 8.

[53]RJN, Exh. 10.

[54]RJN, Exh. 11.

[55]RJN, Exh. 12.

[56]RJN, Exh. 13.

[57]RJN, Exh. 14.

Recorder;[58] and (15) a deed of trust, Document No. 1470055, executed by plaintiff Brian Woods, dated February 2, 2007 and recorded by the Santa Fe County, New Mexico, Recorder.[59]

These documents have been recorded by county recorder's offices, are time and date stamped, and have record numbers. Other courts have taken judicial notice of such documents as public filings. See *Velazquez v. GMAC Mortgage Corp.*, 605 F.Supp.2d 1049, 1057-58 (C.D. Cal. 2008) (taking judicial notice of documents recorded by the Los Angeles County Recorder's Office, including deeds of trust); see also *Krug v. Wells Fargo Bank, N.A.*, No. 11–CV–5190 YGR, 2012 WL 1980860, *2 (N.D. Cal. June 1, 2012) (public records are judicially noticeable under Rule 201); *Grant v. Aurora Loan Services, Inc.*, 736 F.Supp.2d 1257, 1264 (C.D. Cal. 2010) (noting that a "[party] provided a reference number for the document, showing that it was in fact recorded; this demonstrates that it is a public record"); *Fimbres v. Chapel Mortgage Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL 4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee as each was a public record); *Angulo v. Countrywide Home Loans, Inc.*, No. 1:09-CV-877-AWI-SMS, 2009 WL 3427179, *3 n. 3 (E.D. Cal. Oct. 26, 2009) ("The Deed of Trust and Notice of Default are matters of public record. As such, this court may consider these foreclosure documents"); *Distor v. U.S. Bank NA*, No. C 09-02086 SI, 2009 WL 3429700, *2 (N.D. Cal. Oct. 22, 2009) (finding that a deed of trust, notice of default and election to sell under deed of trust, and notice of trustee's sale were matters of public record and thus proper subjects of judicial notice). The court therefore takes judicial notice of these documents as requested by SLS.

SLS also seeks to have the court take judicial notice of plaintiff Deborah Kambich's Chapter 13 Bankruptcy Schedules, which were filed on May 7, 2011 in her voluntary bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of California, Case

---

[58]RJN, Exh. 15.

[59]RJN, Exh. 16.

No. 11-07696-CL13.[60]  Court orders and filings in related proceedings are the proper subject of judicial notice.  See *Reyn's Pasta Bella, LLC v. Visa USA, Inc.* 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings); *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n. 1 (9th Cir. 1996) (court may take judicial notice of pleadings and court orders in related proceedings); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (a court may take judicial notice "of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").  Accordingly, the court takes judicial notice of the filings in Deborah Kambich's pending bankruptcy case.

## II.  DISCUSSION

### A.    Plaintiffs' Motion to Remand

#### 1.    Legal Standard Governing Removal Jurisdiction

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a). "If at any time before final judgment [, however,] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

The right to remove a case to federal court is entirely a creature of statute.  See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).  The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000.  See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a).  Only state court actions that could originally have been filed in federal court can be removed.  28

---

[60]RJN, Exh. 9.

U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985), and *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)). Doubts as to removability must be resolved in favor of remanding the case to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

## 2.   Legal Standard Governing Diversity Jurisdiction[61]

Under 28 U.S.C. § 1332(a), "[t]he district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a); see also *Matheson v. Progressive Speciality Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000"). In any case where subject matter jurisdiction is premised on diversity, there must be complete diversity, i.e., all plaintiffs must have citizenship different than all defendants. See *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267 (1806); see also *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 n. 3 (1996).

---

[61]SLS invokes the court's diversity jurisdiction under 28 U.S.C. § 1332(a). (Removal at 3.) Had SLS invoked the court's federal question jurisdiction, the court would conclude that it lacks jurisdiction to hear the case. Section 1331 vests federal courts with original jurisdiction to hear "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiffs' complaint alleges only violations of state law. (See Complaint at 16-29.) Thus, their claims do not "arise under" federal law or involve a federal question.

### 3. Whether the Court Should Remand the Action to Los Angeles Superior Court

Plaintiffs argue that the court lacks subject matter jurisdiction under § 1332(a).[62] Specifically, they contend that SLS has not met its burden of showing that the amount in controversy exceeds $75,000.00.[63]

### a. Whether the Complete Diversity Requirement is Satisfied

Although the parties do not dispute that complete diversity exists, the court nonetheless evaluates the citizenship of the parties. As an initial matter, plaintiffs do not allege their citizenship in the complaint.[64] In its notice of removal, SLS allege that plaintiffs are domiciled and own property in Kansas, Alaska, California, Texas, and New Mexico.[65] A person is a citizen of a state in which he or she is domiciled. See *Gilbert v. David*, 235 U.S. 561, 569 (1915) (holding a person is a citizen of the state in which she has her domicile, i.e., a permanent home where she intends to remain or to which she intends to return); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return"). The court thus concludes that SLS has adequately alleged the citizenship of plaintiffs.

SLS has also sufficiently alleged its own citizenship. SLS states that it is a "Delaware limited liability company, headquartered in Highlands Ranch, Colorado" and that it is a wholly-owned subsidiary of Specialized Loan Servicing Holdings LLC ("SLS Holdings"), which, in turn, is a wholly-owned subsidiary of Computershare Limited, an Australian corporation with its principal place of business in Australia.[66] The Ninth Circuit treats limited liability companies like

---

[62]MTR at 1-2.

[63]*Id.*

[64]See Complaint, ¶¶ 20-31 (referring to each plaintiff as a "competent adult").

[65]See Removal, ¶¶ 7-9.

[66]See *id.*, ¶ 10.

14

partnerships for purposes of diversity jurisdiction.  See *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (applying the standard used by sister circuits and treating LLCs like partnerships).  Thus, "an LLC is a citizen of every state of which its owners/members are citizens."  *Id.*; see also *Handelsman v. Bedford Village Assocs., Ltd. Partnership*, 213 F.3d 48, 51-52 (2d Cir. 2000) (recognizing that "a limited liability company has the citizenship of its membership").

SLS is a wholly-owned subsidiary of SLS Holdings; thus, SLS has the citizenship of its "member," SLS Holdings.  SLS Holdings, in turn, is a limited liability company, wholly owned by Computershare Limited.  Thus, SLS's citizenship is the same as Computershare Limited's. Because a corporation is a "citizen of any State by which it has been incorporated and of the State where it has its principal place of business," 28 U.S.C. § 1332(c)(1), Computershare Limited, SLS Holdings, and SLS are citizens of Australia.  Because SLS is not a citizen of any state of which a plaintiff is a citizen, the complete diversity requirement is satisfied.

   **b.**  **Whether the Amount in Controversy Requirement is Satisfied**

     **(1)**  **Legal Standard Governing Pleading of the Amount in Controversy**

"[W]hen a complaint filed in state court alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, [the amount in controversy] requirement is presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot actually recover that amount."  *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). See also *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (stating that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith," and that "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal").  Where, by contrast, "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled[,] . . . [courts] apply a preponderance of the evidence standard."  *Guglielmino*, 506 F.3d at 699.  Finally, "when a state-court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the 'party seeking removal must prove with legal certainty that [the]

1  jurisdictional amount is met.'"  *Id.* (quoting *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994,

2  1000 (9th Cir. 2007)).[67]

3

4      [67]In *Lowdermilk*, 479 F.3d at 999, the Ninth Circuit held that when a plaintiff pleads a

5  specific amount in controversy that is less than the jurisdictional minimum, a defendant seeking

6  to remove the case under the Class Action Fairness Act ("CAFA") must show to a "legal

7  certainty" that the jurisdictional amount is at issue.  The court identified two principles informing

8  this conclusion: "First, as federal courts, we are courts of limited jurisdiction and we will strictly

9  construe our jurisdiction.  Second, it is well established that the plaintiff is 'master of her

10  complaint' and can plead to avoid federal jurisdiction." *Id.* at 998-99 (citations omitted).  Several

11  district courts subsequently applied the legal certainty rule in § 1332(a) diversity jurisdiction cases.

12  See, e.g., *Site Mgmt. Solutions, Inc. v. TMO CA/NV, LLC*, No. CV 10–08679 MMM (JEMx),

13  2011 WL 1743285, *3 (C.D. Cal. May 4, 2011) (applying the legal certainty standard in a §

14  1332(a) diversity jurisdiction case); *Lara v. Trimac Transp. Servs. Inc.*, No. CV 10–4280–GHK

15  (JCx), 2010 WL 3119366, *1 n. 1 (C.D. Cal. Aug. 6, 2010) (same); but see *Lyon v. W.W.

16  Grainger, Inc.*, No. C 10–00884 WHA, 2010 WL 1753194, *1 (N.D. Cal. Apr.29, 2010) ("It

17  would be an unprecedented extension of Ninth Circuit caselaw to apply the burden of proof that

18  plaintiff suggests to a non-CAFA case such as this").

    In *Standard Fire Insurance Company v. Knowles*, 133 S. Ct. 1345, 1347 (2013), plaintiff
filed a class action, alleging that he and the "[c]lass stipulate[d] they [would] seek to recover total
aggregate damages of less than [the CAFA jurisdictional threshold of] five million dollars."
Defendant removed, invoking CAFA. *Id.* at 1348.  The district court remanded.  It found that
although the amount in controversy would have exceeded $5,000,000 in the absence of the
stipulation, it could not be met given the stipulation. *Id.*  The Supreme Court held that the district
court erred in relying on the stipulation because "a plaintiff who files a proposed class action
cannot legally bind members of the proposed class before the class is certified." *Id.* at 1349.

    In *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975 (9th Cir. 2013), the Ninth
Circuit recognized that *Standard Fire* overruled *Lowdermilk*'s "legal certainty" standard in CAFA
cases.  See *id.* at 977 ("Our reasoning there for imposing on defendants the burden to prove the
amount in controversy to a legal certainty, rather than the ordinary preponderance of the evidence
standard, is clearly irreconcilable with the Supreme Court's reasoning in *Standard Fire*").  The
court held that the second principle informing the *Lowdermilk* rule – to "preserve the plaintiff's
prerogative . . . to forgo a potentially larger recovery to remain in state court"– was "directly
contradicted by *Standard Fire*['s holding that] a plaintiff seeking to represent a putative class could
not evade federal jurisdiction by stipulating that the amount in controversy fell below the
jurisdictional minimum." *Id.* at 980, 981.  The court also concluded that *Standard Fire* had
overruled *Lowdermilk*'s directive that district courts "need not look beyond the four corners of the
complaint to determine whether the CAFA jurisdictional amount is met," and that § 1332(d)
required district courts to evaluate the potential claims of absent class members rather than
plaintiff's complaint. *Id.* at 981.

    Since *Rodriguez* was decided, district courts in the Ninth Circuit have disagreed as to
whether the legal certainty standard continues to apply in non-CAFA cases.  Compare *Stelzer v.*

When measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims in the complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal.2002). Section 1332(a)'s amount in controversy requirement excludes only "interest and costs," and thus attorneys' fees are properly included in the calculation. *Guglielmino*, 506 F.3d at 700. "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008); *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal.2005).

To determine whether the removing party has met its burden of showing that the amount in controversy requirement is satisfied, the court can consider the contents of the notice of removal and "summary-judgment-type evidence" relevant to the amount in controversy at the time of removal. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir.2004). The court can also consider supplemental evidence later proffered by the removing defendant, i.e., evidence that was not originally included in the notice of removal. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n. 1 (9th Cir. 2002). A court cannot base a finding of jurisdiction on a defendant's speculation and conjecture; "[r]ather, [the] defendant must set forth the underlying facts supporting its assertion

---

*CarMax Auto Superstores Cal., LLC*, 13–CV–1788–LAB–JMA, 2013 WL 6795615, *5 & n. 2 (S.D. Cal. Dec. 20, 2013) (applying the legal certainty standard) with *Cagle v. C&S Wholesale Grocers, Inc.*, No. 2:13–cv–02134–MCE–KJN, 2014 WL 651923, *7 (E.D. Cal. Feb. 19, 2014) (holding that the preponderance of the evidence standard applies).

The court believes that *Standard Fire* and *Rodriguez* leave the legal certainty rule intact in non-CAFA cases. The rationale underlying those decisions – i.e., that a plaintiff cannot bind absent class members before a class is certified – has no application outside the class action context. In contrast, the reasoning that underlies the *Lowdermilk* rule – i.e., that federal courts are courts of limited jurisdiction, and that a plaintiff is "master of her complaint" – applies with full force in non-CAFA cases. Moreover, the "legal certainty" test for cases such as this does not derive from *Lowdermilk* and rests on a distinct line of reasoning. The Ninth Circuit announced the rule in *Sanchez v. Monumental Life Insurance Company*, 102 F.3d 398, 402 (9th Cir. 1996). Accordingly, the court concludes that neither *Knowles* nor *Rodriguez* disturbs the "legal certainty" rule used to determine the amount in controversy in removal cases that are not class actions.

that the amount in controversy exceeds the statutory minimum." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 WL 26996, *2 (N.D. Cal. Jan. 2, 2014).

Each plaintiff affirmatively alleges that the amount in controversy on his or her claims does not exceed $75,000.[68]   Accordingly, SLS must prove to a legal certainty that the amount in controversy for each plaintiff exceeds $75,000.

### (2) Whether SLS Has Shown to a Legal Certainty That the Amount in Controversy Requirement is Met

Plaintiffs argue that the amount in controversy requirement is not satisfied because each of them explicitly disclaims damages exceeding $75,000 in the complaint, and each seeks no additional forms of relief, i.e., injunctive or declaratory relief.[69]   Plaintiffs reference an allegation that appears in each of their causes of action:

> "All inclusive, each Plaintiff is seeking a combined *total recovery from all causes of action and all manner of recovery* – including general damages, special damages, and any other compensation or disgorgement – of no more than $75,000.00 total. (This amount also includes the monetary value of any non-monetary items sought or awarded.)   *It is Plaintiffs' desire and decision to avoid federal jurisdiction by avoiding any matters involving a federal question in this Complaint and by setting the amount in controversy at no more than $75,000 for each Plaintiff.*   Plaintiffs are *not* seeking punitive damages, statutory damages or attorney's fees.   Plaintiffs are *not* seeking injunctive relief.   Plaintiffs are *not* seeking declaratory relief.   Plaintiffs are *not* seeking to rescind or otherwise cancel any of the loans described herein. Finally, Plaintiffs are *not* seeking to challenge the ownership rights of any real

---

[68]See Complaint at 18, 20, 22, 23, 25, 27, 28, ¶¶ 37, 43, 51, 57, 66, 75, 83.

[69]MTR at 1.

18

1    property they may currently own or that they may have previously owned in the

2    past."[70]

3    SLS counters that "plaintiffs have ple[d] themselves into the Court's jurisdiction despite trying to

4    be sly with their purported 'careful' pleading."[71]   It maintains the amount in controversy

5    requirement is satisfied because: (1) the individual plaintiffs' recoveries can be aggregated to

6    satisfy the jurisdictional amount;[72] and (2) the relief each plaintiff seeks places more than $75,000

7    at issue for that plaintiff.[73]   The court considers each of SLS's arguments in turn.

8                              **(a)      Whether the Relief Sought by Each Plaintiff Can Be**

9                                      **Aggregated to Satisfy the Amount in Controversy**

10          In its notice of removal and its opposition, SLS argues that the "matter in controversy"

11   under §1332(a) is at least $900,000, and thus far exceeds the $75,000 jurisdictional threshold,

12   "because plaintiffs each seek $75,000 in damages."[74]   Implicit in this argument is an assumption

13   that plaintiffs' claims can be aggregated to satisfy the amount in controversy requirement.

14          "Aggregation is appropriate only where a defendant 'owes an obligation to the group of

15   plaintiffs as a group and not to the individuals severally.'" *Gibson v. Chrysler Corp.*, 261 F.3d

16   927, 944 (9th Cir. 2001) (citing *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1262 (11th

17   Cir. 2000) (in turn citing *Eagle v. American Tel. & Tel. Co.*, 769 F.2d 541, 547 (9th Cir. 1984))).

18   "[M]ultiple plaintiffs who assert separate and distinct claims are precluded from aggregating them

19   to satisfy the amount in controversy requirement." *Urbino v. Orkin Services of California, Inc.*,

20   726 F.3d 1118, 1122 (9th Cir. 2013) (citing *Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39,

21   40 (1911)); see also *Gibson*, 261 F.3d at 943 ("The rule against aggregating the claims of multiple

22

23   [70]Complaint at 18, 20, 22, 23, 25, 27, 28, ¶¶ 37, 43, 51, 57, 66, 75, 83 (emphasis
     original).

24

25   [71]MTR Opp. at 9.

26   [72]*Id.* at 6-7.

27   [73]*Id.* at 7-9.

28   [74]Removal, ¶ 11; MTR Opp. at 6-7

1    plaintiffs for purposes of determining the amount in controversy dates back at least to 1832. . .

2    . '[W]hen two or more plaintiffs, having separate and distinct demands, unite for convenience and

3    economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional

4    amount,'" quoting *Troy Bank*, 222 U.S. at 40); *Pagel v. Dairy Farmers of America, Inc.*, 986

5    F.Supp.2d 1151, 1155-56 (C.D. Cal. 2013) ("The federal courts have long accepted the general

6    rule that multiple plaintiffs who join together in a single lawsuit to enforce their rights as

7    individuals may not aggregate their claims to satisfy a jurisdictional threshold for the amount in

8    controversy.  This anti-aggregation rule has also long been applied to cases filed in federal court

9    on the ground of diversity jurisdiction," citing *Oliver v. Alexander*, 31 U.S. 143 (1832); *Thomas*

10   *v. Aetna Health of California, Inc.*, No. 1:10-CV-01906-AWI-SKO, 2011 WL 2173715, *14

11   (E.D. Cal. June 2, 2011)); *id.* at 1156 ("'The settled rule is that when two or more plaintiffs

12   having separate and distinct demands unite in a single suit, it is essential that the demand of each

13   be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title

14   or right in which they have a common and undivided interest, it is enough if their interests

15   collectively equal the jurisdictional amount,'" quoting *Pinel v. Pinel*, 240 U.S. 594, 596 (1916));

16   *Pulera v. F & B, Inc.*, No. 2:08-CV-00275 MCE-DAD, 2008 WL 3863489, *3 (E.D. Cal. Aug.

17   19, 2008) ("Historically, aggregated claims of multiple claimants cannot form the basis of the

18   amount in controversy," citing *Troy Bank*, 222 U.S. at 40).

19       Although "the distinction between 'separate and distinct' claims which cannot be

20   aggregated, and 'common and undivided' claims which can, is not always crystal clear," *Gibson*,

21   261 F.3d at 945 (citing *Morrison*, 228 F.3d at 1262; 14B Charles A. Wright et al., FEDERAL

22   PRACTICE AND PROCEDURE § 3704, at 127 (3d ed. 1998)), it is well settled that "simply because

23   claims may have 'questions of fact and law common to the group' does not mean they have a

24   common and undivided interest,'" *Urbino*, 726 F.3d at 1122 (citing *Potrero Hill Cmty. Action*

25   *Comm. v. Housing Authority*, 410 F.2d 974, 977 (9th Cir. 1969)).

26       Here, plaintiffs assert that each was a victim of SLS's purportedly fraudulent collection of

27   home loan payments.  The presence of a common fraudulent scheme does not suffice to establish

28   that plaintiffs have a "common and undivided interest" where each plaintiff has a separate

20

mortgage loan and the claims of each arises out of his or her individual transactions with SLS. See *Bogan v. JPMorgan Chase Bank, N.A.*, 2:14-CV-01484 CAS (VBKx), 2014 WL 1315891, *2 (C.D. Cal. Apr. 2, 2014) (concluding, in an action where plaintiffs alleged that "the securitization of [their] mortgages deprived defendants of the authority to collect mortgage[ ] payments," that defendants could not aggregate the relief sought by each plaintiff to satisfy the jurisdictional threshold because "each plaintiff's claims arises out of different mortgages" and therefore were "separate and distinct"); *Alex v. JP Morgan Chase & Co.*, 2:14-CV-01402-CAS (VBKx), 2014 WL 1325740, *2 (C.D. Cal. Apr. 2, 2014) (same); *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001-02 (C.D. Cal. 2002) ("Here, plaintiff's class allegations clearly give rise to an inference that each class member *individually purchased his or her [Certificate of Deposit] from Morgan Stanley*. Consequently, like the claims in *Kanter* and *Borgeson*, the claims here do not derive from common and undivided rights, and cannot be aggregated" (emphasis added)); *Borgeson v. Archer-Daniels Midland Co.*, 909 F.Supp. 709, 719 (C.D. Cal. 1995) (no aggregation of individual plaintiff's claims allowed where plaintiffs individually purchased product from the defendant); see also *Snyder v. Harris*, 394 U.S. 332, 335 (1969) ("Aggregation has been permitted only (1) in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and (2) in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest."); *Pinel*, 240 U.S. at 596 ("The settled rule is that when two or more plaintiffs having separate and distinct demands unite in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount").

Because plaintiffs' claims are "separate and distinct," they cannot be aggregated to satisfy the jurisdictional amount in controversy. SLS thus has not carried its burden of showing that the amount in controversy required is met under an aggregation theory.

1  **(b)  Whether Plaintiffs Have Requested Relief That**

2  **Places The Jurisdictional Amount at Issue**

3  SLS next argues that the jurisdictional amount is satisfied for each individual plaintiff

4  because the relief each seeks places the amount of his or her mortgage loan in controversy.[75]

5  Plaintiffs dispute this, noting that none of them seeks injunctive or declaratory relief or rescission

6  of his or her individual loan.[76]

7  Notwithstanding plaintiffs' disclaimer, SLS asserts that granting their requested relief, i.e.,

8  damages for its purported fraud and conversion, will necessitate that the court "declare that the

9  mortgages and deeds of trust are invalid," would "impact SLS's right[ ] to enforce the twelve

10  deeds of trust at issue," and would impair its ability to collect the unpaid balance on each loan.[77]

11  Although SLS does not argue this explicitly, it appears to assert that if the court were to award

12  damages for allegedly fraudulent collection activities, this would constitute an implicit finding that

13  it lacks authority as the loan servicer to demand payment of the plaintiffs' mortgage loans, and bar

14  future collection efforts.  SLS cites no authority in support of its theory that a court can treat a

15  plaintiff's damages prayer as a *de facto* request for injunctive or declaratory relief, and conclude

16  that the amount in controversy requirement is, for this reason, satisfied.

17  It is axiomatic that plaintiffs are "master[s] of [their] complaint," *Balcorta v. Twentieth*

18  *Century-Fox Film Corp.*, 208 F.3d 1102, 1106 (9th Cir. 2000).  "[I]f [plaintiffs] do[ ] not desire

19  to try [their] case in the federal court, [they] may resort to the expedient of suing for less than the

20  jurisdictional amount, and though [they] would be justly entitled to more, the defendant cannot

21  remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 284 (1938); see *Patel v.*

22  *Nike Retail Services, Inc.*, __ F.Supp.2d __, 2014 WL 3611096, *3 (C.D. Cal. July 21, 2014)

23  ("'[F]ederal courts permit individual plaintiffs, who are the masters of their complaints, to avoid

24  _____

25  [75]MTR Opp. at 7-9.

26  [76]MTR at 6-8; Plaintiffs' Reply to Opposition to Motion to Remand ("MTR Reply"),

27  Docket No. 16 (Aug. 21, 2014) at 3-5.

28  [77]MTR Opp. at 8-9.

removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement,'" citing *Standard Fire Ins. Co.*, 133 S.Ct. at 1350 (citing *Red Cab Co.*, 303 U.S. at 294)); *Jones v. ADT Sec. Services, Inc.*, No. CV 11-7750 PSG (JCGx), 2012 WL 12744, *3 (C.D. Cal. Jan. 3, 2012) ("Plaintiffs, as masters of their Complaint, have appropriately chosen to unambiguously limit their potential recovery in order to avoid federal jurisdiction," citing *Lowdermilk*, 479 F.3d at 999 ("[I]t is well established that the plaintiff is 'master of her complaint' and can plead to avoid federal jurisdiction")); *Padgett v. Cigna Corp.*, Civil No. 07-00200 DAE-LEK, 2008 WL 639165, *6 (D. Haw. Mar. 6, 2008) ("In the present case, the Complaint alleges that Defendants knew that Plaintiff is disabled and terminated his disability benefits on a pretextual ground.  It also alleges that Defendants conspired to deprive him of benefits due him under the Policy, and that they refuse to comply with the terms of the Policy.  The Complaint, however, does not request the reinstatement of benefits under the Policy.  Subject to a good faith requirement, as the master of his complaint, Plaintiff was free to sue for less than he may be entitled to recover in order to stay in state court.  Plaintiff apparently chose to forego seeking the reinstatement of benefits to avoid federal jurisdiction.  Defendants have not pointed to any evidence which indicates that Plaintiff did so in bad faith"); *Tangletown, LLC v. Underwriters at Lloyd's, London*, No. C06-846C, 2006 WL 2781329, *2 (W.D. Wash. Sept. 25, 2006) ("Since the plaintiff is the master of her complaint, she can avoid having her case heard in federal court by demanding less than $75,000, or choosing defendants with diversity in mind").  Plaintiffs' ability to avoid federal jurisdiction is not absolute, however.  A plaintiff cannot allege the amount in controversy in bad faith.  *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961) ("The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith'"); *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) ("The amount in controversy alleged by the proponent of federal jurisdiction – typically the plaintiff in the substantive dispute – controls so long as the claim is made in good faith"); *Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000) ("Generally, the amount in controversy is determined from the face of the

pleadings.  The sum claimed by the plaintiff controls so long as the claim is made in good faith" (citations omitted)).  A removing defendant, moreover, can overcome a plaintiff's by proffering "summary judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (citing *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995)).

It is also "well-settled . . . that whatever the collateral effects a decree or judgment might have by virtue of *stare decisis*, collateral estoppel, or any other impact on the rights or interests" of the parties to the action or third parties "cannot be taken into account in calculating the amount in controversy."  14 AA WRIGHT, FEDERAL PRACTICE & PROCEDURE, Jurisdiction § 3702.5; see *Healy v. Ratta*, 292 U.S. 263, 267 (1934) ("[T]he collateral effect of the decree, by virtue of *stare decisis*, upon other and distinct controversies, may not be considered in ascertaining whether the jurisdictional amount is involved, even though their decision turns on the same question of law"); *New England Mortg. Sec. Co. v. Gay*, 145 U.S. 123, 130 (1892) ("It is well settled in this court that, when our jurisdiction depends upon the amount in controversy, it is determined by the amount involved in the particular case, and *not by any contingent loss either one of the parties may sustain by the probative effect of the judgment, however certain it may be that such loss will occur*" (emphasis added)); *Hansen Beverage Co. v. DSD Distributors, Inc.*, No. 08CV0619 LAB (RBB), 2008 WL 5233180, *6 (S.D. Cal. Dec. 12, 2008) ("'[J]urisdiction depends upon the matter directly in dispute in the particular cause, and the court is not permitted, for the purpose of determining its sum or value, to estimate its collateral effect,'" quoting *Quinault Tribe of Indians v. Gallagher*, 368 F.3d 648, 655 (9th Cir. 1966) (citing *City of Opelika v. Daniel*, 109 U.S. 108 (1883); *Town of Elgin v. Marshall*, 106 U.S. 578 (1883))).

Given these controlling principles, the court concludes that SLS's argument is unavailing. As SLS recognizes,[78] plaintiffs do not seek rescission of their loans or injunctive or declaratory relief precluding SLS from demanding payment under the loans.  Plaintiffs make the point quite

---

[78]MTR Opp. at 8 ("While SLS is aware that plaintiffs allege that they are not seeking injunctive or declaratory relief (Compl. ¶ 83), these allegations are nonsensical and designed to avoid federal jurisdiction").

24

clearly in each of their causes of action.[79]  That the practical effect of a judgment in plaintiffs' favor may be that SLS cannot collect future payments under the loans is collateral to the controversy pled because plaintiffs do not seek an order invalidating the loans, a declaration that SLS is not the servicer of the loans, or an injunction against future demands for payment.  Because plaintiffs do not seek injunctive or declaratory relief, the value of the loans is not the "value of the object of the litigation."  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977), superseded by statute on other grounds as stated in *United Food & Commer. Workers Union Local 751 v. Brown Group*, 517 U.S. 544 (1996)).  Rather, the amount in controversy is measured by the damages each plaintiff seeks; this amount is below the jurisdictional threshold. SLS has thus failed to prove to a legal certainty that the jurisdictional amount is in controversy and the action must be remanded to Los Angeles Superior Court.[80]

Even if the court were to agree with SLS that plaintiffs' fraud allegations are tantamount to a request for injunctive and/or declaratory relief, it would still conclude that the case must be remanded because SLS has failed to establish *to a legal certainty* that the amount in controversy is satisfied with respect to each plaintiff's loan.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  *Cohn v. Petsmart*, 281 F.3d 837, 840 (9th Cir. 2002) (citing *Hunt*, 432 U.S. at 347).  When a plaintiff seeks an equitable remedy, it is often difficult to place a monetary value on the "object of the litigation" viewed from the plaintiff's perspective, but relatively straightforward to ascertain the cost to the defendant of

---

[79]See Complaint at 18, 20, 22, 23, 25, 27, 28, ¶¶ 37, 43, 51, 57, 66, 75, 83

[80]In its notice of removal, SLS cites Judge Beverly Reid O'Connell's and Judge Steven V. Wilson's decisions denying remand in *Graner v. Wells Fargo Bank, N.A.*, No. CV 2:14-01421-BRO (VBKx) (C.D. Cal. 2014) (Docket No. 25) and *Brown v. Select Portfolio Servicing, Inc.*, No. CV 2:14-01536-SVW (MRWx) (C.D. Cal. 2014) (Docket No. 12), respectively.  (See Removal at 2.)  The *Graner* and *Brown* cases are inapposite.  In both cases, plaintiffs sought injunctive and/or declaratory relief related to the mortgage loans at issue and the parties' rights thereunder.  (See *Graner*, No. CV 2:14-01421-BRO (VBKx) (Docket No. 1-2 ("Complaint") at 42; *Brown*, No. CV 2:14-01536 SVW (MRWx) (Docket No. 1 ("Removal"), Exh. B ("Complaint") at 29).  Plaintiffs here expressly disclaim injunctive and declaratory relief.

1    complying with the injunction.  See *Packard v. Banton*, 264 U.S. 140, 142 (1924); *Mississippi*

2    *& M.R. Co. v. Ward*, 67 U.S. 485, 492 (1862).  Thus, in assessing the amount in controversy in

3    such cases, federal courts employ the "either viewpoint" rule, which permits the "object of the

4    litigation" to be valued either from the plaintiff's viewpoint or the defendant's viewpoint.  See

5    *Smith v. Adams*, 130 U.S. 167, 175 (1889) ("[T]he pecuniary value of the matter in dispute may

6    be determined . . . by the pecuniary result to one of the parties immediately from the judgment");

7    *In re Ford Motor Co./Citibank*, 264 F.3d 952, 959 (9th Cir. 2001) ("Under the 'either viewpoint'

8    rule, the test for determining the amount in controversy is the pecuniary result to either party

9    which the judgment would directly produce").

10         In actions seeking to invalidate or rescind a mortgage loan, "some district courts in the

11   Ninth Circuit have relied on the amount of [the] indebtedness . . . , while others have looked to

12   the fair market value of the property to determine whether the amount in controversy requirement

13   is met."  *Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667 JCS, 2010 WL 2629785, *5 (N.D.

14   Cal. June 29, 2010).  When considering the amount of indebtedness, district courts in the circuit

15   have disagreed as to whether the total value of the loan or the plaintiff's current indebtedness

16   should be used to determine the amount in controversy.  Compare *Garcia v. Citibank, N.A.*, No.

17   2:09-CV-03387-JAM-DAD, 2010 WL 1658569, *2 (E.D. Cal. Apr. 23, 2010) ("Here, Plaintiff

18   seeks declaratory and injunctive relief in the Complaint, requesting an injunction to prevent the

19   foreclosure proceedings.  In addition, Plaintiff seeks rescission of the contract and damages.  The

20   subject loan amount was originally $221,000.00, excluding interest.  As such, if the contract were

21   rescinded, the value of relief would be at least $221,000.00, which far exceeds the requisite

22   amount in controversy") with *Reyes*, 2010 WL 2629785 at *6 ("[D]ocuments attached to the

23   Complaint indicate that the amount of unpaid debt on the loan at the time of the trustee's sale was

24   $460,946.68.  Therefore, [the] method of valuing the litigation puts this case over the $75,000.00

25   amount in controversy threshold"); *Henderson v. Nationstar Mortg. Co., LLC*, No. C07-2039

26   JLR, 2008 WL 302374, *2 (W.D. Wash. Jan. 31, 2008) ("[T]he amount Plaintiff owes on the

27   loan shall be included in the amount in controversy").

28

1    SLS contends that if plaintiffs prove that it has engaged in fraudulent collection activities,

2    it will be unable to collect future payments on the mortgage loans.[81]   From either party's

3    viewpoint, the "object of the litigation" is thus the remaining indebtedness on the loans.   SLS

4    would be deprived of the payments it would otherwise receive and plaintiffs would not be required

5    to make the remaining payments.   Thus, the court agrees with the *Reyes* and *Henderson* courts

6    that, in this case, the remaining indebtedness, rather than the original value of the loans, would

7    be the appropriate measure of the amount in controversy if a judgment in plaintiffs' favor

8    precluded SLS from collecting the balance due on the loans.

9    SLS has failed to establish what this amount would be.   SLS notes that plaintiffs' mortgage

10   loans range in amounts from approximately $200,000 to $500,000.[82]   Documents that can be

11   judicially noticed show that plaintiff Borenin has loans of $189,465[83] and $22,290.00;[84] that

12   plaintiff Dickens has loans of $244,000[85] and $61,000;[86] that plaintiff Diemer has loans of

13   $400,000[87] and $84,500'[88] that plaintiff Kambich has a loan of $342,550;[89] that plaintiff Price has

[81]MTR Opp. at 9.

[82]*Id.* at 7-8.   SLS also asserts that, in the aggregate, the deeds of trust on plaintiffs' properties secure indebtedness of more than $2,885,305.00.   (*Id.* at 8.)   Because each plaintiff's claim is separate and distinct, this aggregate amount is not relevant in determining the amount in controversy.

[83]RJN, Exh. 2 at 2.

[84]*Id.*, Exh. 3 at 2.

[85]*Id.*, Exh. 4 at 1.

[86]*Id.*, Exh. 5 at 1.

[87]*Id.*, Exh. 6 at 2.

[88]*Id.*, Exh. 7 at 2.

[89]*Id.*, Exh. 8 at 2.

27

a loan of $495,000;[90] that plaintiff Simango has loans of $138,640[91] and $34,660;[92] that plaintiff Venegas has loans of $180,000[93] and $45,000;[94] and that plaintiff Woods has loans of $512,000[95] and $76,200.[96]   Thus, the face value of each plaintiff's loans appears to satisfy the amount in controversy requirement.   SLS adduces no evidence concerning the remaining indebtedness on any of the loans, however.   While it may well be the case that the outstanding balance on each loan exceeds the jurisdictional minimum, SLS's burden is to establish *to a legal certainty* that the amount in controversy requirement is satisfied.   Even if the court were to agree that plaintiffs' allegations of fraudulent collection activities amount to a request for equitable relief, SLS's failure to adduce any evidence of the current balance on the loans at issue would preclude a finding that the jurisdictional amount is at issue.   Because SLS has not established that the amount in controversy requirement is satisfied, plaintiffs' motion to remand must be granted.

## B.   Plaintiffs' Request For Attorney's Fees

Plaintiffs seek attorneys' fees under 28 U.S.C. § 1447(c).   "Under 28 U.S.C. § 1447(c), '[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.'"   *Federal Home Loan Mortg. Corp. v. Lettenmaier*, No. CV–11–165–HZ, 2011 WL 1297960, *1 (D. Or. Apr. 5, 2011) (quoting 28 U.S.C. § 1447(c)).   "'Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking

---

[90]*Id.*, Exh. 10 at 3.

[91]*Id.*, Exh. 11 at 2.

[92]*Id.*, Exh. 12 at 2.

[93]*Id.*, Exh. 13 at 2.

[94]*Id.*, Exh. 14 at 2.

[95]*Id.*, Exh. 15 at 2.

[96]*Id.*, Exh. 16 at 1.

1  removal.  Conversely, when an objectively reasonable basis exists, fees should be denied.'"  *Id.*

2  (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)).

3         "Removal is not objectively unreasonable solely because the removing party's arguments

4  lack merit and the removal is ultimately unsuccessful."  *Id.* (citing *Lussier v. Dollar Tree Stores,*

5  *Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008)).   "Rather, the court should assess 'whether the

6  relevant case law clearly foreclosed the defendant's basis of removal' by examining the 'clarity

7  of the law at the time of removal.'"  *Id.* (quoting *Lussier*, 518 F.3d 1066); see also *Patel v. Del*

8  *Taco, Inc.*, 446 F.3d 996, 999–1000 (9th Cir. 2006) ("Del Taco's state court petition to confirm

9  the arbitration award contained only one state law cause of action; it did not contain any federal

10 claim that could provide the basis for a § 1441(c) removal.  Joinder of a federal claim and a claim

11 for removal of a state court action in a federal complaint cannot effect a § 1441(c) removal.  There

12 being no objectively reasonable basis for removal, the district court did not abuse its discretion

13 in awarding attorney's fees under § 1447(c) to Del Taco").

14        Plaintiffs argue that SLS removed the action in bad faith and that they should be awarded

15 attorneys' fees of $5,000.[97]  As evidence of bad faith, plaintiffs assert that despite being "warned

16 seven times in the Complaint that Plaintiffs had expressly selected [a] low amount in controversy

17 . . . to avoid federal jurisdiction," SLS nonetheless removed.[98]  While this appears to be true, the

18 court cannot agree that SLS removed in bad faith.  As noted, SLS's basis for removal, i.e., that

19 plaintiffs' requested relief amounts to a *de facto* request for injunctive and/or declaratory relief,

20 which places the amount of the loans in controversy, does not appear previously to have been

21 considered by the courts.  Although the court found the argument unavailing, it was not clearly

22 foreclosed by case law and the court cannot conclude that SLS lacked an objectively reasonable

23 basis for removal.  Courts have declined to award fees under § 1447(c) in similar circumstances

24 where there was no evidence of improper motive or bad faith.  See *Devenport v. Millbank Ins.*

25 *Co.*, No. CV11–1450–PHX–DGC, 2011 WL 4101146, *2 (D. Ariz. Sept. 8, 2011) ("Here, the

26 _____

27 [97]MTR at 9-11.

28 [98]*Id.* at 10.

29

Court would have had original jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332 if the amount in controversy exceeded $75,000. While the Court finds that Defendants have not established by a preponderance of the evidence that the amount in controversy meets this threshold, the Court nonetheless finds that at the time of removal Defendants had an objectively reasonable basis for such a claim. Therefore, Plaintiffs' request for attorneys' fees is denied"); *Yazzie v. Celadon Trucking Srvs., Inc.*, No. CV-09-8198-PHX-GMS, 2010 WL 749639, *2 (D. Ariz. Mar. 3, 2010) (denying fees even though defendant adduced no evidence that the amount in controversy exceeded $75,000, because "there is no evidence of improper motive, unreasonable bases for removal, or other 'unusual circumstances'"); *Hauer v. Priceline.com Inc.*, No. C 08–02608 JSW, 2008 WL 3286980, *2 (N.D. Cal. Aug. 6, 2008) ("Although it was not ultimately persuaded by Priceline's arguments, the Court does not find that Priceline's removal was frivolous or motivated by bad faith. The Court therefore declines to exercise its discretion to award Plaintiff's fees and costs under Section 1447(c)"); compare *Phelps v. Cox Communications Las Vegas, Inc.*, No. 2:11–CV–00801–PMP-LRL, 2011 WL 6752554, *5 (D. Nev. Dec. 22, 2011) (awarding fees where defendant misstated authority and failed to present evidence that attorneys' fees on a $9,000 claim would exceed $66,000). Because there is no evidence that SLS acted with an improper motive or in bad faith, the court denies Plaintiffs' request for attorneys' fees.

### III.  CONCLUSION

For the reasons stated, the court grants plaintiffs' motion to remand, and directs the clerk to remand the action forthwith to Los Angeles Superior Court. Because it is remanding, the court denies SLS's motion to dismiss as moot. The court denies plaintiffs' request for attorneys' fees.

DATED: October 31, 2014

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE